IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT

IN AND FOR COLLIER COUNTY, FLORIDA

CIVIL DIVISION     8:23-CV-925-WFJ-CPT

CASE NO -

11 2022CA001494 0001 XX

| | |
|---|---|
| SHELLPOINT MORTGAGE SERVICING, LLC, ET ALL | |
| Plaintiffs | COMPLAINT FOR , DAMAGES |
| VS | |
| HELGA G. TYSZLAK | |
| Defendants | |

**COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER STATUTORY RELIEF**

<u>VENUE, JURISDICTION AND PARTIES</u>

1. Venue is properly before this Court. Most of the events, circumstances, damages and denials of rights described herein took place in Collier County, Florida.

2. Plaintiff Shellpoint Mortgage Servicing, LLC, not in its individual capacity, but solely as servicer, and does business in Collier County, Florida claims to be Endorsee of the Note and Assignee of the Deed of Trust, and therefore successor in interest to the originator of the loan, . .

3. Plaintiff U.S. Bank, N.A. claims to be the trustee of VRMTG Asset Trust and the real party in interest. However, so does Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Trustee for CSMC2018-PLP Trust.



4.      The property in question 3063 Horizon Lane, #. 1501, Naples, Fl. 34109, is located in Collier County  Defendants are facing imminent harm and loss of their home . The Instruments mentioned were recorded in Collier County , Florida.. The original loan was a purchase to Helga G. Tyszlak on ~~May 22,~~ JAN 17 2006 to World Savings Bank, FSB which later went out of business during the financial meltdown of 2008. There was a questionable assignment of mortgage on Aug. 12, 2021. Helga G. Tyszlak purchased a securitization audit ( Exhibit A) on March 23, 2022.  The audit ( Exhibit A) states that Select Portfolio Servicing, Inc. as AIF for Wilmington Savings Fund Society, FSB D/B/A Christiana Trust as Trustee for CSMC 2018-PLP Trust assigns its interest to U.S. Bank, N.A. as trustee for the VRMTG Asset Trust.  The securitization audit ( Exhibit A) shows that no document is on file with the SEC as of March 23, 2022.  In addition, Defendant strongly claims there is a legitimate break in the chain of title.  How did Defendant's loan get from World Savings to Wilmington Savings Fund Society and into a new securitized trust in the year 2018 ? It appears the same loan has been securitized first by World Savings, second by Wilmington in 2018 and now a third securitization by U.S. Bank, N.A. into the VRMTG Asset Trust which is not registered with the SEC.  What appears to have taken place is a new scheme by mortgage lenders to sell defaulted loans to discount note buyers who have no interest in modifying or working with home owners. These note buyers advertise to investors an 8% return on investment.  The only way a firm or note buyer can guarantee that kind of return is with the foreclosure sale and high profit margins from the low price they paid for the note and the high price of the foreclosure sale.  This is a "ponzi scheme" perpetrated by the lenders in the Helga Tyszlak case.  Defendants have made numerous attempts to modify

their loan to no avail. These unscrupulous lenders have no intent to work with Defendant. There scheme is to foreclose on the subject property. Shellpoint does not have standing to foreclose as there is no assignments or signatures on the allonges or note to indicate the transfer from World Savings or Wilmington to U.S. Bank, N.A.

5. Defendant became sick with Covid19 in Sept., 2021 and was not able to work due to the illness and the closure of her business as a hair stylist. Defendant was recently on April 10, 2023 in contact with Shellpoint and Defendant was asked to update some of her bank statements. Defendant is in an "active modification" and is seeking to have the foreclosure sale of April 27, 2023 set aside due to "duel tracking" which is a violation of CFPB.

6. Legal Description of the property is:

LOT 'G'90, OF SILVER SHORES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 163, AT PAGE 26, OF THE PUBLIC RECORDS OF COLLIER COUNTY, FLORIDA.

## GENERAL ALLEGATIONS

7. This is an action brought by Defendant for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages and to set aside the Judicial Judgment of Foreclosure due to fraudulent or misleading documents being filed into the court. The case of Defendant Helga G. Tyszlak is one of the most egregious cases of wrongful foreclosure ever before the court.
Defendants feel there has been a violation of Florida statute for Unfair and Deceptive Business Practices in denying them a modification and filing fraudulent assignments or lack of assignments with the court and committed "Fraud Upon the Court"
In order to prove a case of violation of Federal Rule 60 (b) Florida requires :


Florida state courts have articulated a standard which gives the trial court quite a bit of latitude in its determination as to whether dismissal for fraud upon the court is warranted. Naturally, the

appellate court will defer to a trial court's expertise when it comes to determinations of credibility and good faith, and these orders are generally reviewed for abuse of discretion. *Metro Dade County v. Martinsen*, 736 So. 2d 794 (Fla. 3d DCA 1999). Appellate courts may be less deferential where the trial court's determination was based upon a paper record, rather than an evidentiary hearing. *Bologna v. Edwin Schlanger*, 995 So. 2d 528 (5th DCA 2008). However, while evidentiary hearings are clearly favored, there is "no rule, statute, or case" that requires an evidentiary hearing to be held when a motion to dismiss for fraud is filed. *Gilbert v. Eckerd Corp. of Florida, Inc.*, 34 So. 3d 773 (Fla. 4th DCA 2010). When finding that dismissal is the appropriate sanction for a Plaintiff's fraud, the Court must conclude that the Defendant has produced <u>clear and convincing evidence</u> of a fraud, and an order granting Defendant's motion should contain:

Express written findings demonstrating that the trial court has carefully balanced the equities and supporting the conclusion that the moving party has proven, clearly and convincingly, that the non-moving party implemented a deliberate scheme calculate to subvert the judicial process. *Chacha v. Transport USA, Inc.*, 78 So. 3d 727 (Fla. 4th DCA 2012).

Accordingly, a party who prevails on a Motion to Dismiss for Fraud Upon the Court should submit a proposed order which includes <u>express factual findings and in-depth references to the factual record</u> in order to reduce the likelihood of reversal upon appeal. In other words, the order should look like it was written by a federal judge granting summary judgment.

**Legal Standard:**

In general, a trial court has a duty and an obligation to dismiss a cause of action based upon fraud. *Long v. Swofford*, 805 So. 2d 882, 884 (Fla. 3d DCA 2001). The reasoning behind the harsh sanction of dismissal is the principle that a party who has been guilty of fraud or misconduct in the prosecution of a civil proceeding should not then be permitted to continue to employ the very institution he has undermined to achieve his ends. *Hanano v. Murphy*, 723 So.2d 892, 895 (Fla. 3d DCA 1998).

But what type of misconduct rises to the level of fraud? In the personal injury context, failure to disclose prior related injuries, and prior similar accidents can warrant a dismissal for fraud, where the Plaintiff's misrepresentations and omissions go to the the heart of his claim for damages. *Martinsen*, 736 So. 2d at 795. Or, alternatively put, "when a party lies about matters bearing directly on the issue of damages, dismissal is an appropriate sanction." *Cross v. Pumpco,* 910 So. 2d. 324, 328 (Fla. 4th DCA 2005) (citing *Distefano v. State Farm Mut. Ins.*, 846 So. 2d 572, 574 (Fla. 1st DCA 2003)). Note that while failure to disclose medical history and prior accidents has frequently been recognized as warranting dismissal, Courts are generally disinclined to grant such a motion where you catch a Plaintiff lying about their limitations by using surveillance. *Amato v. Intindola*, 854 So. 2d 812 (Fla. 4th DCA 2003); *Jacob v. Henderson*, 840 So. 2d 1167 (Fla. 2d DCA 2003).

In *Metropolitan Dade County v. Martinsen,* the Third District Court of Appeal held that a trial court abused its discretion in failing to dismiss Plaintiff's case for fraud upon the court where the Plaintiff failed to disclose an extensive history of medical treatment for similar injuries suffered in prior car accidents and in a work-related accident in her response to interrogatories and deposition. *Metro Dade County v. Martinsen*, 736 So. 2d 794 (Fla. 3d DCA 1999).

Likewise, in *Long v. Swofford*, the Plaintiff sought damages for lower back injuries that she alleged were caused by an automobile accident. Plaintiff testified during her deposition that before the accident, she had no prior injury or pains to her lower back. During discovery, defendant investigated Plaintiff's medical history and discovered that Plaintiff's claimed injuries were preexisting, and that she had previously received treatment for same. The Third District Court of Appeal held that the trial court's decision to dismiss Plaintiff's case for fraud upon the court was proper because plaintiff provided false or misleading statements under oath concerning issues central to her case. *Long v. Swofford*, 805 So. 2d 882, 883 (Fla. 3d DCA 2001); *see, also Mendez v. Blanco*, 665 So.2d 1149 (Fla. 3d DCA 1996)(dismissing case with prejudice based on Plaintiff's lies told under oath at deposition); *O'Vahey v. Miller*, 644 So.2d 550 (Fla. 3d DCA 1994) (holding that although Plaintiff's perjury regarding his educational background did not directly concern the cause of action itself, dismissal of the entire case was warranted); *Morgan v. Campbell*, 816 So. 2d 251 (Fla. 2d DCA 2002) (dismissal was appropriate where the plaintiff lied about prior injuries and treatment for neck and low back pain).

Particularly relevant factors in the Court's analysis are (1) similarity (or dissimilarity) of non disclosed injury; (2) whether nondisclosure involves all of Plaintiff's claimed damages/injuries; (3) substantial, if incomplete, disclosure of prior injuries, accidents and treating physicians (or, alternatively, complete and total omission); and (4) temporal proximity (remote/recent) of any prior related, and undisclosed injuries. *See e.g. Hair v. Morton*, 36 So. 3d 766 (Fla. 3d DCA 2010) (overturning dismissal where Plaintiff's nondisclosure related to only part of her claimed damages); *Cross v. Pumpco*, 910 So. 2d 324 (Fla. 4th DCA 2005) (overturning dismissal where Plaintiff had disclosed four prior accidents and multiple pre-existing injuries, but failed to disclose a fifth accident which had occurred some seven years prior to his deposition); *Armakan v. McLean*, 800 So. 2d 314 (Fla. 3d DCA 2001) (overturning dismissal where Plaintiff had failed to disclose a somewhat dissimilar injury which had occurred 18 years prior to his deposition); *Ruiz v. City of Orlando*, 859 So. 2d 574 (Fla. 5th DCA 2003) (overturning dismissal where Plaintiff failed to fully disclose symptoms from an accident which had occurred over 30 years prior to her deposition).

As the aforementioned cases illustrate, the ultimate question is whether the Plaintiff could have credibly 'not remembered' the prior injuries that they omitted. If the injury occurred a long time ago, they would presumably be far less likely to remember the injury, which, in turn, makes it far more difficult to <u>clearly and convincingly</u> establish that the Plaintiff was deliberately lying under oath. Likewise, substantial, albeit incomplete, disclosure of prior injuries, would make it far less likely that the Plaintiff was attempting to hide the truth during their deposition. You would expect someone to go whole hog if they were intent upon committing perjury. Finally, the relatedness/similarity of the nondisclosed injuries weighs upon credibility, because a Plaintiff would have less of an incentive to hide them. Moreover, failure to disclose unrelated injuries does less to undermine the integrity of the judicial system, because, presumably, if these unrelated injuries were known, they wouldn't have an effect on the damages the Plaintiff was actually entitled to.

Ultimately, these motions should be used sparingly, when it is clear that you are dealing with a Plaintiff who has no regard for the truth, and who is simply trying to manipulate the system. When questioning such a Plaintiff, make sure to ask specific questions, and don't try to 'trick' him into nondisclosure. In addition to simply being immoral, courts have recognized this one and don't go for it. *Bologna v. Edwin Schlanger*, 995 So. 2d 526, 529 (5th DCA 2008) (overturning dismissal

and noting that deposition questions were "very broad in scope with virtually no follow up questions").

Finally, in order to avoid losing all of your sunk costs to such a motion, Plaintiffs' counsel would be well advised to take the time to meet with their clients and ensure that they fully disclose everything. Obtaining signed releases and looking through their medical history is likely in your client's best interest as well, even if you have to "save him from himself." After all, even if the Motion is denied, your client's credibility will be shot. To the best of my knowledge, there's no rule of professional conduct that requires you to dig this deeply, and it may not be malpractice to take your client at his word, but it is certainly in the best interests of your client, not to mention, a wise business decision.

## FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL FORECLOSURE, PROMISSORY ESTOPPEL

**A.** **No Plaintiff Has Standing to Foreclose**

14. Defendant re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

15. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Defendant contends that Plaintiffs, and each of them, do not have an equitable right to foreclose on the Property because Plaintiff's, and each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. The real party in interest is a Securitized REMIC Trust T/B/D. Also, through violations of Fed. Rule 60 (b) Defendant has a cause of action for violations of Bankruptcy fraud and FDCPA by denying her loan modifications on numerous times. Thus, the purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each of them, no longer applies. Plaintiff are attempting to wrongfully foreclose in Collier County, Florida ..The securitization audit ( Exhibit A) clearly shows a break in the chain of title in the assignment of Aug. 12, 2021.

16. Defendant requests that this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because Plaintiff's' actions in the processing, handling and attempted foreclosure of this deed involved numerous

fraudulent, false, deceptive and leading practices, including, but not led to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Defendant further requests that title to the Real Property remain in Plaintiff's possession during the pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and void". Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law. Therefore, Defendant SHELLPOINT MORTGAGE, LLC cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, SHELLPOINT MORTGAGE, LLC cannot transfer an interest in Real Property, and cannot recover anything from Defendants' with unclean hands.

17. Plaintiff's, and each of them, through the actions alleged above, claim the right to illegally commence foreclosure sale of Defendant's Real Property under the Mortgage/Deed of Trust on the Real Property via an *in Rem* action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Defendant's great and irreparable injury in that Real Property is unique.

18. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home which will be wrongfully foreclosed on April 27, 2023 and is now seeking damages. Defendant spoke to Shellpoint on April 10, 2023 and were informed they were in an "active modification" and needed more documents. Plaintiff's are "duel tracking" and the foreclosure sale scheduled for April 27, 2023 constitutes promissory estoppel.

19. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Defendant has suffered and will continue to suffer in the future unless Plaintiff's' wrongful conduct is restrained and enjoined because Real Property is inherently

unique and it will be impossible for Defendant to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION

(Against Lender Plaintiff's for an Accounting)

20. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-19 above, as if set forth fully herein.
21. Plaintiff's were obligated to properly account for Defendant's payments made under the Bankruptcy and as otherwise agreed between the parties.
22. Plaintiff's failed to properly account for the charges they billed Defendant's for, overcharging her for years with unwarranted fees and reimbursements and improperly applying payments, resulting to damage to Defendant.
23. As a result of Plaintiff's ' actions, an accounting is necessary so that Plaintiff may be reimbursed for all improper excessive charges and misapplied payments.

## THIRD CAUSE OF ACTION

(Against Lender Plaintiff's for Breach of Contract)

24. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-24 above, as if set forth fully herein.
25. There was a written loan modification contract that the Lender Plaintiff's were bound by. That contract is attached hereto as Exhibit 2 (the "Loan Modification"). Defendant's on April 10, 2023 contacted Shellpoint and were informed they are in an "active modification" and

Shellpoint needed updated information.

26. Plaintiff substantially performed all of her duties under the Loan Modification Contract, but the Lender Defendants wrongfully prevented Defendants to reinstate an existing modification and refused to accept their future attempts to modify the loan even though they had adequate income and hardship. Defendant's had a modification in 2006 and later another modification. .

27. Plaintiff's breached the Loan Modification in numerous ways, including but not limited to wrongfully and fraudulently and without proper notification to Defendant charging her for unauthorized and unnecessary expenses.

28. As a result of Plaintiff's actions, Defendant suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000.

## FOURTH CAUSE OF ACTION
(Against Lender Defendants for Breach of the Implied Covenant of Good Faith and Fair Dealing)

29. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-28 above, as if set forth fully herein.

30. There was a written loan modification contract that the Lender Plaintiff were bound by. That contract is attached hereto as Exhib2t 1 (the "Loan Modification").

31. The Lender Plaintiff were bound by the written Loan Modification. Every contract carries with it a basic duty to engage in good faith and fair dealing.

32. Plaintiff's acted in bad faith and frustrated the purpose of the Loan

Modification in numerous ways, including but not limited to wrongfully and fraudulently and without proper notification to Defendant unilaterally denying her mortgage payments and charging her for unauthorized and unnecessary expenses.

33. As a result of Plaintiff's ' actions, Defendant suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000.

## FIFTH CAUSE OF ACTION

(Against Lender Plaintiff s for Promissory Estoppel)

34. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraph 1-33 above, as if set forth fully herein.
35. The Lender Plaintiff made numerous promises to Defendant, including promises made in court through counsel, that they improperly reneged on, including a promise to modify their mortgage. .
36. Defendant reasonably relied on these promises.
37. The Lender Plaintiff failed to comply with any of those promises.
38. As a result, Defendant's property was repeatedly and improperly threatened with foreclosure, Defendant's credit was compromised, and she was forced to expend unnecessary money to try and salvage her home, thus she suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000.

## SIXTH CAUSE OF ACTION

(Against Lender Plaintiff's for Negligence)

39. Defendant restates, realleges, and incorporates by reference into this

paragraph each and every allegation contained in paragraphs 1-38 above, as if set forth fully herein.

40. The Lender Plaintiff's were negligent in how they held and serviced the Loan Modification and in the steps they took toward foreclosure on the Property.

41. As a result, Defendant was severely damaged. The Property was damaged, and it was also put under lien. All the damages in this case in some way trace back to these instances of negligence.

42. As a result of Plaintiff's' actions, Defendant suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000.

## SEVENTH CAUSE OF ACTION

(Against Lender Plaintiff for Concealment)

43. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-42 above, as if set forth fully herein.

44. Plaintiff failed to provide Defendant and her attorneys any specific amount of alleged default or any intent to accelerate their claims and proceed with foreclosure actions without proving the alleged debt valid, failing to provide appropriate opportunity for Defendant to cure.

45. Defendant did not know this nor could she have discovered it.

46. On information and belief, Plaintiff intended to deceive Defendant with their concealment so she would lose her home and Plaintiff's would profit thereby.

47. On information and belief, Plaintiff's did not intend to fulfill their obligations to assist the Defendant in trying to prevent any foreclosure but rather were taking great measures to cause it to intentionally happen,

even if it required violating numerous rules and regulations to try and protect a homeowner as outlined in the Florida statutes, the CFPB Regulations including but not limited to Regulation X and the Guidelines established by the FTC. Had Plaintiff's not concealed information from her, Defendant could have behaved differently, including by seeking options other than bankruptcy to preserve her credit and save her home such as curing any minor arrears directly with the lender, which were grossly overstated.

48. Defendant has repeatedly been scheduled to lose her Property at auction as a result of wrongful actions toward foreclosure.

49. Plaintiff's' concealment was a substantial factor in causing Defendant's harm.

50. Plaintiff's' actions were willful, malicious, fraudulent, and carried out with reckless disregard to Defendant's rights and interests.

51. As a result of Plaintiff's actions, Defendant suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000, as well as the loss of the Property at auction.

## EIGHTH CAUSE OF ACTION

(Against Lender Plaintiff's for False Promise)

52. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-63 above, as if set forth fully herein.

53. The Lender plaintiff's promised Defendant, inter alia, that she could work with them to make limited payments through her bankruptcy and avoid foreclosure.

54. Plaintiff's did not intend to keep these promises when they made them.

55. Defendant reasonably relied on these promises.
56. Plaintiff's did not keep these promises.
57. Defendant's Property was repeatedly sent to auction as a result.
58. As a result of Plaintiff's' actions, Defendant suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000.

## NINTH CAUSE OF ACTION

(Against Lender Plaintiffs for Fraud, Violation of Fed. Rule 60 (b))

59. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-75 above, as if set forth fully herein.
60. Plaintiff's failed to provide Defendant and her attorneys any specific amount of alleged default or any intent to accelerate their claims and proceed with foreclosure actions without proving the alleged debt valid, failing to provide appropriate opportunity for Plaintiff to cure. In addition her automatic stay in Bankruptcy Court was lifted by fraudulent means.
61. Defendant did not know this nor could she have discovered it.
62. On information and belief, Plaintiff's intended to deceive Defendant with their concealment so she would lose her home and Plaintiff's would profit thereby.
63. On information and belief, Plaintiff's did not intend to fulfill their obligations to assist the Defendant in trying to prevent any foreclosure but rather were taking great measures to cause it to intentionally happen, even if it required violating numerous rules and regulations to try and protect a homeowner as outlined in the Florida Code, the CFPB Regulations including but not limited to Regulation X and the

Guidelines established by the FTC. Had Plaintiff's not concealed information from her, defendant could have behaved differently, including by seeking options other than bankruptcy to preserve her credit and save her home such as curing any minor arrears directly with the lender, which were grossly overstated.

64. Defendant has repeatedly been scheduled to lose her Property at auction as a result of wrongful actions toward foreclosure.

65. Plaintiff;s ' concealment was a substantial factor in causing Defendant ' harm.

66. Plaintiff's ' actions were willful, malicious, fraudulent, and carried out with reckless disregard to Defendant's rights and interests.

67. As a result of Plaintiff's 's actions, Defendant suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000, as well as the loss of the Property at auction.

## TENTH CAUSE OF ACTION

(Against Lender Plaintiff's for Negligent Misrepresentation)

68. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-67 above, as if set forth fully herein.

69. Plaintiff's represented to Defendant , inter alia, that she could work with them to make limited payments through her bankruptcy and avoid foreclosure.

70. Defendant ' reasonable reliance on that representation caused her to suffer severe hardship, financial and otherwise, when they foreclosed anyway.

71. As a result of Plaintiff's' actions, Defendant suffered severe damages.

The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000.

### ELEVENTH CAUSE OF ACTION
(Against All Plaintiff's for Detrimental Reliance)

72. Defendant restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-71 above, as if set forth fully herein.
73. Defendants detrimentally relied on Plaintiff to modify their loan due to a legitimate hardship .
74. Defendant were harmed in that sale in that the property has been repeatedly improperly put up for auction.
75. Defendant would have attempted to tender the amount of the secured indebtedness but was excused from so tendering because Plaintiff ' willfully oppressive actions hindered her from so doing in a fair manner. They demanded far more than they were owed and refused to negotiate. Moreover, it was their own negligence that caused the indebtedness in the first place.
76. As a result of Plaintiff's 's actions, Defendant has suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $25,000, and her property is now at risk of being lost in a wrongful foreclosure auction.

### TWELTH CLAIM FOR RELIEF
### VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
### 15 U.S.C. §§ 1692 -1692p
### (Against All Plaintiff's )

77. Defendant incorporates by reference the foregoing paragraphs as though fully set forth herein.

78. Each Nationstar, et al, account obligation was a "debt" within the meaning of FDCPA, 15 U.S.C. section 1692a(5).

79. Because they were allegedly obligated to pay the Nationstar, et al, account obligation, Defendant was a "consumer" within the meaning of FDCPA, 15 U.S.C. section 1692a(3).

80. The Nationstar, et al 3 Trust bought or was assigned to Nationstar, et al debt.

81. Since Nationstar, et al no longer owned the securitized debt it had previously written off, there was nothing for Nationstar, et al to sell or to be assigned. The loan had been securitized into the Fannie Mae REMIC Trust T/B/D which was the real party in interest.

82. Each of said Plaintiff's, at times relevant hereto, was a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

83. Based on said activity or activities, each of said Plaintiff's were a debt collector within the meaning of FDCPA, 15 U.S.C. section 1692.

84. Nationstar, et al, et al and the Nationstar, et al Pass-Through Certificates, Series Fannie Mae Trust, as the purported assignee of Shellpoint violated FDCPA by using false, deceptive, and/or misleading representations and/or means in

connection with the collection of the Nationstar, et al account obligation, 5 U.S.C. section 1692(e).

85. Nationstar, et al, were involved in other fraudulently activity against Defendant by not validating the debt after receiving numerous debt validation letters..

86. Said Plaintiff's violated FDCPA by falsely representing the character, amount, and/or legal status of the Nationstar, et al account obligation. 15 U.S.C. section 16923(2)(A),

87. Said Plaintiff's violated FDCPA by using a false representation or deceptive means to attempt to collect the Nationstar, et al account obligation. 15 U.S.C. section 1692e(i0).

88. Said Plaintiff's violated FDCPA by attempting to collect an amount (including interest, fees and charges) not expressly authorized by any agreement creating the Nationstar, et al account obligation or permitted by law, 15 U.S.C. section 192f(1).

WHEREFORE, Defendant requests that the Court enter judgment in their favor and against said defendants, pursuant to FDCPA, 15 U.S.C. section 1602k(a), as follows:

Actual damages, including, but not limited to, costs and attorney's fees to defend the collection matter. From each said Plaintiff, statutory damages of $1,000.00 for each named Plaintiff and, an amount not to exceed the lesser of $500,000.00 or 1% of the net worth of such Plaintiff; and Costs of this action and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays:

89. For an award of compensatory damages according to proof but in an amount not less than $25,000 in favor of Defendant

    a.    For an award of punitive and exemplary damages according to proof;

    b.    For statutory damages according to proof;

    c.    For an award of attorneys' fees;

    d.    For interest at the maximum legal rate from and after the filing date to the date of judgment;

    e.    For injunctive relief preventing the transfer of the Property to the winner of any auction;

    f.    For the costs of repairing Defendant's credit and any such injunctive or declaratory relief as needed to ensure Defendants undertake any actions necessary to achieve such repair;

    g.    For costs of suit herein; and

    h.    For such other relief as the court may deem just and proper.

Dated: September 9, 2022    Respectfully submitted,

By: _Helga Tyszlak_
HELGA G. TYSZLAK

3063 HORIZON LANE
#1501
NAPLES, FL 34109
239-287-3039